**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VINCENT AGBEMEHIA | ) | |
| | ) | |
| Respondent-Below/ | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. K23A-04-001 RLG |
| | ) | |
| DELAWARE BOARD OF NURSING | ) | |
| | ) | |
| Petitioner-Below/ | ) | |
| Appellee. | ) | |

**Submitted:** September 8, 2023
**Decided:** January 5, 2024

**ORDER**

***Upon Appeal from the Delaware Board of Nursing – AFFIRMED.***

Gwendolyn M. Osborn-Gustavson, Esquire, Schwartz & Schwartz, Dover, Delaware. *Attorney for Respondent-Below/Appellant.*

Jennifer L. Singh, Esquire, Deputy Attorney General, Dover, Delaware. *Attorney for Petitioner-Below/Appellee.*

**GREEN-STREETT, J.**

1

## I.     Introduction

The instant appeal stems from the Delaware Board of Nursing's ("the Board") decision to annul Vincent Agbemehia's nursing license. In its March 8, 2023 Disciplinary Order ("Order"),[1] the Board upheld a prior annulment of Mr. Agbemehia's nursing license on the grounds that (1) he never met the educational requirements for licensure, and (2) he committed fraud in his license application.[2] Mr. Agbemehia now appeals the Order, contending that the Board lacked substantial evidence to support its decision and violated his due process rights.[3] The Court's review of the record reveals that the Board's decision is supported by substantial evidence, lacks legal error, and does not constitute any abuse of discretion. Therefore, the Board's Order is **AFFIRMED**.

## II.     Factual and Procedural Background

The Board awarded Mr. Agbemehia a license to practice as a registered nurse in Delaware on April 13, 2022.[4] On November 15, 2022, the Board informed Mr. Agbemehia that his license was annulled because the Board determined his nursing

---

[1] Disciplinary Order of the Del. Bd. of Nursing at 6 (Mar. 8, 2023).

[2] Appellant's Opening Br. at 3-4.

[3] Id. at 5.

[4] Appellee's Answering Br. at 1.

education was fraudulent.[5] The Board based this determination on an affidavit provided by the Federal Bureau of Investigation that listed students – including Mr. Agbemehia – who received fraudulent nursing degrees from certain institutions.[6] The Board held a review hearing (the "Hearing") on the matter, and ultimately upheld its decision to annul Mr. Agbemehia's nursing license in the Order.[7]

Mr. Agbemehia's appeal, at its core, attacks the scope of the Hearing. He asserts that the Board relied, at least initially, on erroneous grounds to annul his license. Upon the realization that its original basis for annulment was invalid, Mr. Agbemehia submits that the Board then searched for other reasons to uphold the annulment of his license. It is Mr. Agbemehia's position that the subsequent investigation and cited basis for annulment exceeded the scope of notice the Board provided him prior to the Hearing, and thus violated his due process rights.

### A. The Napoleon Affidavit

In November 2022, the Federal Bureau of Investigation provided the Board with an affidavit penned by Johanah Napoleon (the "Napoleon Affidavit").[8] The Napoleon Affidavit outlined that Mr. Napoleon owned and operated four nursing

---

[5] App. to Appellant's Opening Br. at A-0029.

[6] Id.

[7] Disciplinary Order of the Del. Bd. of Nursing at 6.

[8] App. to Appellant's Opening Br. at A-0001.

schools, all of which provided at least some students with illegitimate nursing degrees.[9]  It listed students who received illegitimate degrees, diplomas, and transcripts from those four schools.[10]  Mr. Agbemehia's name, social security number, and date of birth were listed in the Napoleon Affidavit as a student who obtained an illegitimate nursing degree.[11]

### B. The Annulment of Mr. Agbemehia's Nursing License

On November 15, 2022, the Board sent a letter (the "Notice Letter") to Mr. Agbemehia advising that it had voted to annul his nursing license for "fraudulent misrepresentation" regarding his education.[12]  Specifically, the Board noted that Mr. Agbemehia did not "meet the statutory requirements for licensure."[13]  After receiving the Notice Letter, Mr. Agbemehia exercised his right to a hearing on the matter, resulting in the Hearing before the Board on February 8, 2023.[14]

---

[9] Id. at A0017-18 (the four listed schools are Sunshine Academy, Med-Life Institute, Palm Beach School of Nursing, and Quisqueya Health Care Academy).

[10] Id. at A-0019.

[11] Appellee's Answering Br. at 2.

[12] App. to Appellant's Opening Br. at A-0029.

[13] Id. at A-0030.

[14] Id. at A-0031.

## C. The Hearing

Mr. Agbemehia did not attend the Hearing.[15] Through counsel, Mr. Agbemehia submitted a two-page affidavit ("Agbemehia's Affidavit") to the Board.[16] Agbemehia's Affidavit confirmed that Mr. Agbemehia never attended any of the four schools named in the Napoleon Affidavit. During the Hearing, Mr. Agbemehia's counsel explained to the Board, on Mr. Agbemehia's behalf, that Mr. Agbemehia did not know why his identifying information appeared in the Napoleon Affidavit.[17] Mr. Agbemehia speculated that his name appeared in the Napoleon Affidavit in error due to a prior application to Med-Life Institute ("Med-Life").[18]

Agbemehia's Affidavit also outlined Mr. Agbemehia's nursing education. Mr. Agbemehia began pursuing his associate degree at Jersey College School of Nursing ("Jersey College"), but did not complete the program.[19] After pausing his education, Mr. Agbemehia applied to several nursing programs, including Med-Life.[20] Although Mr. Agbemehia applied to Med-Life, he never attended Med-Life. He

---

[15] Tr. of Proceedings Before Del. Bd. of Nursing at 10-12 (Feb. 8, 2023).

[16] Id.

[17] Id. at 11.

[18] App. to Appellant's Opening Br. at A-0047.

[19] Id. at A-0048.

[20] Id.

5

opted to attend Suncoast College of Health ("Suncoast") and graduated from that program in May 2015.[21]

When questioned by the Board regarding the inconsistencies in Mr. Agbemehia's application for licensure, his attorney clarified that Mr. Agbemehia committed an "innocent error."[22] With regard to his education, Mr. Agbemehia's counsel demystified statements made in Agbemehia's Affidavit that he obtained most of his course credits, but had not graduated, from Jersey College, as was initially indicated on his application.[23] Instead, Mr. Agbemehia graduated from Suncoast.[24]

With regard to disciplinary action, Mr. Agbemehia's counsel indicated that he previously received probation from the Pennsylvania Board of Nursing. To that end, his attorney posited that Mr. Agbemehia may not have understood that "probation counts as discipline," which led him not to report that discipline on his license

---

[21] Id.

[22] Id. at 10-12.

[23] App. to Appellant's Opening Br. at A-0047-48; see also Tr. of Proceedings Before Del. Bd. of Nursing at 11.

[24] Tr. of Proceedings Before Del. Bd. of Nursing at 11.

6

application as required.[25]  Agbemehia's Affidavit did not address his previous probationary period at all.[26]

The Board held public deliberations at the Hearing.  First, it discussed the transfer of Mr. Agbemehia's credits from Jersey College to Suncoast.[27]  The Board noted that the credits Suncoast accepted as complete from Jersey College did not match the detailed transcript from Jersey College.[28]  The Board also discussed that nursing programs usually do not accept transfer credits for classes specific to a certain college's nursing curriculum – in other words, that transferring credits between nursing programs is typically difficult.[29]  Despite this challenge, Mr. Agbemehia transferred 93 credits from Jersey College to Suncoast.

The Board articulated another fundamental issue with Mr. Agbemehia's transfer to Suncoast.  Commonly, standard practice for nursing programs requires that anyone who fails two classes must repeat the nursing program from the beginning.[30]  Although Mr. Agbemehia failed at least two classes at Jersey College,

---

[25] Id. at 11-12.

[26] App. to Appellant's Opening Br. at A-0047-48.

[27] Tr. of Proceedings Before Del. Bd. of Nursing at 16.

[28] Id. at 16-19.

[29] Id. at 23.

[30] Id. at 19.

he transferred almost all of his credits to Suncoast and completed the nursing program without needing to repeat it.[31] The Board concluded that a legitimate nursing program would not have permitted such a transfer.[32] Based on these issues regarding Mr. Agbemehia's Suncoast transcript, the Board voted to uphold its prior decision to annul Mr. Agbemehia's license.[33]

The Board next considered the "fraudulent misrepresentation" prong of Mr. Agbemehia's license annulment.[34] The Board conceded that, although Mr. Agbemehia's personal information appeared on the Napoleon Affidavit, he did not attend any of the four schools specifically identified as fraudulent.[35] Notwithstanding clarity on the Napoleon Affidavit information, the Board still perceived several flaws in Mr. Agbemehia's nursing education. Based on the abnormally large amount of credits Suncoast accepted via transfer, Mr. Agbemehia's incorrect statements on his initial license application, and his prior experience in obtaining a nursing license in Pennsylvania, the Board unanimously determined that Mr. Agbemehia knowingly misrepresented the extent of his education to obtain his

---

[31] Id.

[32] Id.

[33] Id. at 30, 38.

[34] Id. at 30; see also App. to Appellant's Opening Br. at A-0029.

[35] Tr. of Proceedings Before Del. Bd. of Nursing at 31.

nursing license in Delaware.[36]  Accordingly, the Board found that he committed fraud in obtaining his nursing license.[37]

### D. The Board's Decision

The Board issued its Order on March 8, 2023.[38]  The Board upheld the annulment of Mr. Agbemehia's license, finding him "guilty of fraud or deceit in procuring a license."[39]  The Board outlined that it "disregarded the [Napoleon Affidavit,] but found multiple examples of Mr. Agbemehia failing to be forthright and noted that his transcript … was rife with inconsistencies."[40]  Specifically, the Board found Mr. Agbemehia's explanation for his incorrect answers on his license application "lack[ed] credibility."[41]  The Board also observed that Mr. Agbemehia's discipline from the Pennsylvania Board of Nursing stemmed from "falsifying or knowingly making incorrect entries into a patient's records."[42]  The Board cited 24

---

[36] Id. at 37-38.

[37] Id.

[38] Disciplinary Order of the Del. Bd. of Nursing at 1.

[39] Id. at 2.

[40] Id. at 3.

[41] Id. at 4.

[42] Id.

Del. C. § 1910(1) and (5) as grounds for annulling Mr. Agbemehia's license.[43]  The Board further found that Mr. Agbemehia's "continued practice in Delaware was an emergent threat to the public's health, safety, and welfare[,] and his license should remain annulled under 29 Del. C. §§ 10132 & 10134."[44]  The Order formally declared Mr. Agbemehia's license "legally invalid and annulled," and functioned as a public disciplinary order reported to the National Practitioner Data Bank.[45]

### E. The Instant Appeal

Mr. Agbemehia now appeals the Order.  First, Mr. Agbemehia advocates that the Order violated his due process rights.[46]  In support of this argument, Mr. Agbemehia submits that the Notice Letter annulled his license solely on the basis of his apparent link to fraudulent schools.[47]  He insists that the Notice Letter improperly placed the burden of proof on him to "disprove the Board's unfounded disciplinary

---

[43] Id. at 5; see 24 Del. C. § 1910(1) (requiring applicants to verify by oath that they hold "a certificate from a State Board of Nursing approved education program … ."'); see also 24 Del. C. § 1910(5) (requiring that applicants verify by oath that they have "committed no acts which are grounds for disciplinary actions as set forth in § 1922(a) of this title … .").

[44] Disciplinary Order of the Del. Bd. of Nursing at 6; see 29 Del. C. § 10132(b) ("Whenever an agency proposes to … annul … a license, such action shall not be effective until a final order is issued, except when the public health, safety[,] or welfare clearly requires emergency action …."); see also 29 Del. C. § 10134 (outlining that no license can shall be annulled "unless the licensee fails to comply with the lawful requirements for retention of such license.").

[45] Disciplinary Order of the Del. Bd. of Nursing at 6.

[46] Appellant's Opening Br. at 6.

[47] Id. at 9.

determination."[48]  Mr. Agbemehia further ratiocinates that the Board abandoned its original basis for annulling his license, instead conducting a hearing that "failed to adhere to the scope of the proceedings as the issues were described in the Notice Letter."[49]  Given the overbreadth of the Hearing from Mr. Agbemehia's perspective, he concludes that his due process rights were violated.[50]

Second, Mr. Agbemehia maintains that the Order was "clearly erroneous and not supported by any substantial evidence, requiring reversal."[51]  Mr. Agbemehia posits that the Board clearly erred in determining that he failed to graduate from a Board-approved nursing school, as Suncoast maintained Board approval at the time he attended.[52]  Mr. Agbemehia reasons that the Board's finding that he committed fraud in securing his license was unsupported by the evidence present in the record.[53]  Mr. Agbemehia asserts that the two incorrect answers he provided on his licensure application were inadvertent mistakes, which Mr. Agbemehia believes he clarified

---

[48] Id.

[49] Id.

[50] Id.

[51] Id. at 11.

[52] Id.

[53] Id. at 14.

11

before receiving his license.[54]  As such, Mr. Agbemehia rationalizes that the Board lacked evidence to support its conclusions.[55]

Conversely, the Board argues that Mr. Agbemehia's due process rights were not violated.[56]  The Board cites to 29 Del. C. § 10131(c), the statute which governs licensure hearings, as its basis for the Notice Letter sent to Mr. Agbemehia.[57]  The Board also contends that Mr. Agbemehia's continued licensure "posed an emergent threat to the public's welfare."[58]  The Board further alleges that Mr. Agbemehia's academic record contained clear deficiencies, which, coupled with his previous omissions on his licensure application, formed the basis for annulling his license.[59]

By way of further explanation, the Board notes that its members are appointed to serve on the Board due to their experience and expertise.  These members are clearly allowed to rely on their collective experience when making licensure decisions.[60]  The Board relied on its collective expertise and experience in

---

[54] Id. at 15.

[55] Id. at 16.

[56] Appellee's Answering Br. at 11.

[57] Id. at 14; see also 29 Del. C. § 10131 (governing the notice requirements of hearings pertaining to licensure).

[58] Appellee's Answering Br. at 16.

[59] Id. at 17-18, 23.

[60] Id. at 24-25.

determining that Mr. Agbemehia's education did not meet the Board's standards.[61] Thus, the Board submits that its assessment of Mr. Agbemehia's education and application was sufficient to annul his license.[62] Likewise, the Board avers that Mr. Agbemehia's two false statements on his licensure application, coupled with his history of fraudulent behavior as a licensed nurse in Pennsylvania, justified its finding that Mr. Agbemehia committed fraud.[63]

In response, Mr. Agbemehia alleges that, if the Board's argument is accepted by the Court, the Board would be allowed to annul the license of any nurse who attended school outside of Delaware.[64] Following the Board's logic, Mr. Agbemehia submits that the Board would be permitted to annul the license of any nurse, improperly shift the burden of proof to said nurse, and then uphold the annulment on entirely separate grounds.[65] Finally, Mr. Agbemehia disputes the statutory grounds on which the Board relied because the Hearing went beyond the scope of a standard licensure hearing.[66] Because the Order constituted a "public disciplinary

---

[61] Id. at 25-26.

[62] Id. at 26.

[63] Id. at 28.

[64] Appellant's Reply Br. at 2.

[65] Id.

[66] Id. at 5.

order … reported to the National Practitioner Data Bank," Mr. Agbemehia argues the Board needed to comply with the Administrative Procedures Act.[67]

### III.  Standard of Review

29 Del. C. § 10142 governs the Court's review of the Board's decision.  "Any party against whom a case decision has been decided may appeal such decision to the [Superior] Court."[68]  The Court reviews the record and determines if the Board's decision "was supported by substantial evidence on the record" and is free from legal error.[69]  "Unless the [B]oard erred as a matter of law, did not support its decision by substantial evidence, or abused its discretion, the Court will uphold the [B]oard's decision."[70]  "Substantial evidence is evidence that would lead a reasonable mind to support a conclusion."[71]  "The Court is not the trier of fact and does not have the authority to weigh the evidence or make its own factual findings."[72]  The Court

---

[67] Id. at 5-6; see also 29 Del. C. § 10142 (outlining the requirements for review of a case decision under the Administrative Procedures Act).

[68] 29 Del. C. § 10142(a).

[69] 29 Del. C. § 10142(d).

[70] Cooper v. Del. Bd. of Nursing, 2021 WL 754306, at *3 (Del. Super. Feb. 26, 2021), aff'd, 264 A.3d 214 (Del. 2021) (citing Eckeard v. NPC Int'l, Inc., 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012)).

[71] Id. (citing Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981)).

[72] Villabona, 2004 WL 2827918, at *2 (citing Johnson v. Chrysler Corp., 213 A.2d 64, 66 (1965)).

reviews questions of law *de novo*.[73] "[W]hen this Court acts in its appellate capacity on an appeal from an administrative board, the Court will not consider issues not raised before the tribunal."[74]

## IV.  **Discussion**

First, the Court must determine which issues Mr. Agbemehia raised before the Board. Those issues which Mr. Agbemehia could have raised below at the Hearing – but failed to raise at that time – are not properly before this Court and cannot be considered in Mr. Agbemehia's appeal.[75] This review narrows the scope of this Court's appellate inquiry.

In Mr. Agbemehia's November 28, 2022 letter requesting a hearing before the Board, his counsel states that the Notice Letter notified Mr. Agbemehia that he was one of the individuals identified in the Napoleon Affidavit.[76] At the Hearing, Mr. Agbemehia's counsel represented that Mr. Agbemehia's name appeared on the Napoleon Affidavit in error.[77] Her representations to the Board were supported by

---

[73] Villabona, 2004 WL 2827918, at *2.

[74] Tatten Partners, L.P. v. New Castle Cnty. Bd. of Assessment Rev., 642 A.2d 1251, 1262 (Del. Super. 1993), aff'd sub nom. New Castle Cnty. v. Tatten Partners, L.P., 647 A.2d 382 (Del. 1994) (citing Wilmington Tr. Co. v. Conner, 415 A.2d 773, 781 (Del. 1980)).

[75] Mazen v. City of Dover Bd. of Assessment Appeals, 2016 WL 520996, at *4 (Del. Super. Ct. Jan. 22, 2016), aff'd sub nom. Shahin v. City of Dover Bd. of Assessment Appeals, 149 A.3d 227 (Del. 2016).

[76] App. to Appellant's Opening Br. at A-0031.

[77] Tr. of Proceedings Before Del. Bd. of Nursing at 11.

an affidavit signed by Mr. Agbemehia – Agbemehia's Affidavit.[78]  Mr. Agbemehia's counsel also addressed the discrepancy as to the school from which Mr. Agbemehia initially indicated he graduated in his nursing license application.[79]  Mr. Agbemehia submitted his transcripts from Jersey College and Suncoast as exhibits at the Hearing in support of that testimony.

Mr. Agbemehia's correspondence with the Board lacks any objection to the Board's process.  Mr. Agbemehia did not contest the Board's statutory authority to annul his license.  Mr. Agbemehia made no evidentiary objection to the Board's reliance on the Napoleon Affidavit for its initial decision.  Mr. Agbemehia did not argue that the Board improperly shifted the burden of proof to him at the Hearing.  Mr. Agbemehia did not contest the sufficiency of the notice provided by the Notice Letter.  As these all constitute issues Mr. Agbemehia could have raised before the Board, this Court cannot and will not address them for the first time as part of this appeal.

The Court agrees with Mr. Agbemehia that he could not have raised an issue regarding the scope of the Hearing until the Hearing occurred.  Mr. Agbemehia properly raises that issue for the first time in this appeal.  Mr. Agbemehia also

---

[78] App. to Appellant's Opening Br. at A-0047.

[79] Id.

16

properly challenges the sufficiency of the evidence relied upon by the Board for the first time at this juncture. Therefore, the Court will address each of those claims in turn.

## A. Mr. Agbemehia's due process rights were not violated

The Court first addresses Mr. Agbemehia's due process arguments.[80] "In an administrative proceeding, due process entails providing the parties with [an] opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding."[81] "Further, due process requires that [any] notice inform [a] party of the time, place, and date of the hearing[,] [as well as] the subject matter of the proceedings."[82] "Due process, unlike some legal rules, is not a technical notion with [ ] fixed content unrelated to time[,] place[,] and circumstances; rather[,] it is a flexible concept [that] calls for such procedural protections as the situation demands."[83] "As a general rule, an individual's due

---

[80] The State briefly argues in its Answering Brief that Mr. Agbemehia did not challenge the sufficiency of the notice before his appeal, and thus should not be considered by this Court (Appellee's Answering Br. at 12 n.4). But, as Mr. Agbemehia correctly notes in his Reply Brief, he could not have argued the notice failed to provide the scope of the hearing without knowing the scope of the hearing (Appellant's Reply Br. at 4).

[81] Husbands v. Del. Dep't of Educ., 227 A.3d 558, 2020 WL 1814045, at *1 (Del. 2020) (TABLE) (internal quotations omitted) (quoting Vincent v. E. Shore Markets, 970 A.2d 160, 164 (Del. 2009)).

[82] Id.

[83] Vincent, 970 A.2d at 164.

17

process rights are not violated, and will not [affect] the validity of an administrative determination, unless actual prejudice is shown."[84]

29 Del. C. §10131 outlines the notice requirements for hearings related to professional licensure. "Whenever an agency proposes to … annul … a license, or where it is required by law or regulation to give notice, it shall first give written notice to the licensee or applicant of the intended action and the reasons therefor."[85] The notice must "conform as far as practicable" with 29 Del. C. § 10122, "except that[,] instead of a hearing date, it may afford the party at least 10 days to request a hearing."[86] Mr. Agbemehia argues that, because the Board's decision served as a "case decision," the Board needed to comply fully with 29 Del. C. § 10122.[87] 29 Del. C. § 10102(3) defines a "case decision" as "any agency proceeding or determination that a named party as a matter of past or present fact, … is or is not in violation of a law or regulation, or is or is not in compliance with any existing requirement for obtaining a license … ."[88]

---

[84] Sandefur v. Unemployment Ins. Appeals Bd. of State, 1993 WL 389217, at *5 (Del. Super. Aug. 27, 1993).

[85] 29 Del. C. § 10131(c).

[86] Id.

[87] Appellant's Opening Br. at 6.

[88] 29 Del. C. § 10102(3).

18

The Board's decision and subsequent Order fit squarely within that definition. 29 Del. C. §10131 outlines the notice requirements for "[w]henever an agency proposes to … annul a license … ."[89] Because 29 Del. C. § 10131 clearly and unambiguously states its purpose as governing notice requirements of hearings regarding licensure, "the plain meaning of the statutory language controls."[90] The Board's notice to Mr. Agbemehia needed to comply with § 10122 only "as far as practicable" – which it did.[91] Thus, Mr. Agbemehia's argument that the Notice Letter necessitated heightened compliance with § 10122 fails.

As to the scope of the Hearing, Mr. Agbemehia contends that he only possessed notice that the Board would consider whether his name erroneously appeared on the Napoleon Affidavit.[92] Mr. Agbemehia argues that, because the Board disregarded the Napoleon Affidavit, it based its decision entirely on "grounds other than those presented in the notice."[93] Although Mr. Agbemehia correctly states that the Board ultimately disregarded the Napoleon Affidavit in reaching its decision,

---

[89] 29 Del. C. § 10131(c).

[90] Jud. Watch, Inc. v. Univ. of Del., 267 A.3d 996, 1004 (Del. 2021) (internal quotations omitted) (quoting Ins. Com'r of State of Del. v. Sun Life Assur. Co. of Canada (U.S.), 21 A.3d 15, 20 (Del. 2011) (citing Dir. of Revenue v. CNA Holdings, Inc., 818 A.2d 953, 957 (Del. 2003))).

[91] 29 Del. C. § 10131(c).

[92] Appellant's Reply Br. at 4.

[93] Id.

he omits that the Board also relied upon Mr. Agbemehia's own submissions of his school transcripts and license application as the basis for its findings.[94]

Given that Mr. Agbemehia submitted both of his transcripts as exhibits for the Hearing, it defies logic to suggest he lacked proper notice that the Board would consider those transcripts in any findings it made. Similarly, because Mr. Agbemehia submitted updated responses amending the two incorrect answers in his nursing application as an exhibit, Mr. Agbemehia cannot now assert that he did not expect the Board to consider those responses within the scope of the hearing. A due process violation requires a showing of *actual* prejudice.[95] Mr. Agbemehia cannot show any *actual* prejudice stemming from the Board considering Mr. Agbemehia's *own* exhibits in the Board's deliberations. Accordingly, the Board did not violate Mr. Agbemehia's due process rights.

**B.** **The Board's factual findings are supported by substantial competent evidence and are free from any errors of law**

The Court next turns to Mr. Agbemehia's argument that the Board's decision is "clearly erroneous and not supported by any substantial evidence."[96] When reviewing the evidence relied upon by the Board, this Court limits its review "to

---

[94] App. to Appellant's Opening Br. at A-0003-04.

[95] Sandefur, 1993 WL 389217, at *5 (Del. Super. Aug. 27, 1993).

[96] Appellant's Reply Br. at 11.

determining whether the Board's factual findings are supported by substantial competent evidence[,] and to determining whether the Board committed any errors of law."[97]   If the Court finds the Board's decision is supported by substantial evidence and free of legal error, then the decision must stand.

In reaching its ultimate conclusion, the Order outlines that the Board relied upon "documentary evidence," as well as arguments from Mr. Agbemehia's counsel.[98]  That documentary evidence consisted of an email exchange between Mr. Agbemehia and a Board representative in which he explained the erroneous disclosures on his license application; copies of Mr. Agbemehia's school transcripts; and Agbemehia's Affidavit.[99]  Based on that evidence, the Board concluded that Mr. Agbemehia never possessed the qualifications required to be a registered nurse, and that he committed fraud when he applied for a registered nursing license.[100]

Specifically, the Board found inconsistencies in Mr. Agbemehia's transcripts.[101]  Mr. Agbemehia received transfer credits for several classes he never

---

[97] Michael v. Del. Bd. of Nursing, 2017 WL 3980540, at *3 (Sept. 8, 2017).

[98] App. to Appellant's Opening Br. at A-0003.

[99] Id.

[100] App. to Appellant's Opening Br. at A-0005-06.

[101] Id. at A-0005.

completed.[102]  Mr. Agbemehia also received more transfer credits at Suncoast than he received for the same classes at Jersey College.[103]  The Board determined that no acceptable nursing program would have allowed Mr. Agbemehia to complete a nursing degree in only a few months – particularly when nursing programs often require a candidate to retake all courses if they fail at least two courses within the program.[104]  Mr. Agbemehia failed two courses while attending Jersey College.[105]

In light of these findings, Mr. Agbemehia contests the Board's reliance on the expertise of its own members regarding nursing education standards.[106]  From Mr. Agbemehia's perspective, the Board should not have relied on the Board's own experience with Delaware nursing programs to evaluate a nursing program based in Florida.[107]  Further, Mr. Agbemehia points to Delaware's statutory language that requires that an applicant for licensure earn a certificate from a nursing program certified by any state, not specifically the state of Delaware.[108]  The Board clearly

---

[102] Id.

[103] Id.

[104] Id.

[105] Id.

[106] Appellant's Opening Br. at 10.

[107] Id. at 13.

[108] Appellant's Reply Br. at 9-10.

possesses, however, the authority to determine which nursing programs meet the standards for obtaining a nursing license in Delaware.[109] 29 Del. C. § 1906(a)(5) expressly authorizes the Board to "deny or withdraw approval from educational programs for failure to meet approved curricula or other criteria."[110]

The Board initially approved Suncoast's nursing program at the time Mr. Agbemehia applied for his license.[111] Upon further inspection and investigation, the Board found that Mr. Agbemehia's school transcripts contained material inconsistencies.[112] Those inconsistencies led the Board to conclude that Mr. Agbemehia never received the requisite education for a registered nursing license.[113] Mr. Agbemehia appears to argue that the Board cannot annul his license because the school he attended possessed Board approval at the time he attended; however, the Board's decision did not rest on whether Suncoast maintained approval. The Board based its decision on its determination that Mr. Agbemehia's specific path to completing his degree – which involved transferring most of his credits to, and

---

[109] 29 Del. C. § 1906(a).

[110] 29 Del. C. § 1906(a)(5).

[111] Appellant's Reply Br. at 16.

[112] App. to Appellant's Opening Br. at A-0005.

[113] Id.

earning a degree from, a new school in just a few months – could not have met the educational requirement to earn a registered nursing license in Delaware.[114]

As to the Board's finding that Mr. Agbemehia committed fraud, the Board considered the totality of Mr. Agbemehia's circumstances in its determination. The Board first found that the process by which he received a degree from Suncoast lacked legitimacy.[115] Next, the Board considered Mr. Agbemehia's prior experience in becoming a Licensed Practical Nurse ("LPN") in the state of Pennsylvania, determining that, at a minimum, Mr. Agbemehia likely held familiarity with nursing education standards.[116] Lastly, the Board considered what it deemed a "pattern of falsifying documents."[117] Mr. Agbemehia initially failed to disclose he graduated from Suncoast.[118] Mr. Agbemehia also failed to disclose his disciplinary record in Pennsylvania, which included a term of probation for falsifying patient documents.[119] Whether Suncoast held Board approval did not play a substantial

---

[114] Id. at A-0005-06.

[115] Id.

[116] Id. at A-0067-68.

[117] Id. at A-0005.

[118] Id. at A-0071.

[119] Id. at A-0004.

factor in the Board's deliberations.[120] To prevent a finding of fraud when an applicant provides an illogical transcript from an approved school, like the instant case, would run contrary to the Board's authority and public policy. The Board grounded its finding of fraud in substantial evidence present in the record, and, therefore, this Court will not disturb that finding.

## V. Conclusion

The Board based its decision on substantial evidence. The Board's decision was free from any errors of law. Mr. Agbemehia's due process rights were not violated. Accordingly, the Board's decision must be **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

---

[120] Id. at A-0069-72 (the Board discussed Suncoast's approval, and acknowledged Suncoast's Board approval at the time Mr. Agbemehia applied for his license. But the Board went on to conclude that, based on Mr. Agbemehia's answers on his licensure application, he had committed fraud regardless of Suncoast's approval status).